## S. A. HAGARTY, ETC., v. S. S. SCOTT, ETC.

### APPEAL FROM BOONE CIRCUIT COURT.

March 4, 1872.

**Pleadings—Cross-Petition—Prayer for Relief.**
> There is no prayer in the pleadings for a specific execution of the contract of purchase, but a prayer for a rescission; and this is all the relief that can be afforded.

OPINION OF THE COURT BY JUDGE PETERS:

A rehearing of this case is sought mainly on the ground that appellant Foster is greatly prejudiced by the judgment, and that the reasons why he is entitled to a reversal were overlooked in the opinion delivered by this court. And in the petition for a rehearing it is said that if he, Foster, had examined the county records when Hagarty made the deed to him he would have found that the latter had a deed from Dulaney, and he a deed from the sheriff, all regular in form, and nothing to excite his suspicion that all was not right, etc.

To ascertain the exact position of Foster in the controversy it is proper to look with some minuteness into the pleadings.

The suit was brought by Hagarty against Foster on the note for the last instalment owing by Foster to Hagarty for the land, and in his answer to that suit Foster says that when the title bond was made to him and the deed was executed by Hagarty, "he was doubtful in regard to the title, and as to whether there was not some dower interest in said property, and wishing to make such provison as would protect him in the purchase, and that he might hold so much of said purchase money as would protect him, did agree and so provide in the contract of pur-

chase that a sufficiency of the last payment should be retained by defendant to secure him in the title to said property, should any question arise in regard to the title being perfect, and he says and charges "that the title to said land is not perfect and there is danger of his being disturbed in his title to same," and after setting out the facts in relation to Mrs. Scott, he charges that "she has a potential right of dower in said land, that she claims it," and he then avers that the whole amount of the note sued on will not be more than sufficient to indemnify him against her claim.

He then makes his answer a cross-petition against Scott and wife for the purpose of compelling them to interplead and of having the title adjusted, and prays that Hagerty may be restrained from the collection of the note until Mrs. Scott's claim shall be settled.

Scott makes his first appearance in this case to answer Foster's cross-petition, and after setting forth the facts on which he bases his claim to the land, he in turn makes *his* answer a cross-petition against Hagarty and Foster, and Dulaney prays to have the various deeds set aside and for a restoration of the property to him on equitable terms.

Appellant Foster, in his answer to *Scott's cross-petition*, after denying generally any knowledge or information sufficient to form a belief as to how Hagarty derived title farther back than his deed from Dulaney, he says he had made valuable and lasting improvements on the property, and if, on investigation, it should turn out that it was not Hagarty's when he purchased it, and the property should be recovered by a superior claim, then he prays judgment against Hagarty for the amount paid him with interest, and for the value of the improvements made by him.

There is not to be found in any of his pleadings a direct prayer for a specific execution of his contract, but a prayer in effect, if not in express terms, for a rescission if he can not get a perfect title, including a relinquishment of Mrs. Scott's potential right of dower. How can he get that? The law is powerless to secure it to him. The chancellor could allow him to retain out of the purchase money as much as would indemnify him against that claim, but he does not ask in his cross-petition for the relief; the only redress the chancellor can afford him is a cancella-

tion of the contract, and that is what he seeks, as we have already seen, and that was granted him by the court below. It is difficult to perceive how he can complain of that judgment.

But if he had examined "the county records" what he would have found was that the sheriff, in consideration of the sum of $215.91, the amount bid at two sales of the property made by him by virtue of two executions in his hands against Scott, he had conveyed the property to Dulaney, for which he was willing to pay three thousand dollars, and he would have further found that Hagarty, his immediate vendor, had paid only one thousand dollars, and aver as he did that *he could "not get a perfect title to the same."*

As between Hagarty and Foster there is no judgment which we can review, nor are we asked to do so, and still deeming the judgment of the court below correct, and finding nothing in the opinion heretofore delivered inconsistent with the settled principles of equity, we are constrained to overrule the petition for a rehearing.

*Drane, for appellants.*

*Ò'Hara, for appellees.*